Meguiar v. Helm.

CASE 3—PETITION EQUITY—DECEMBER 11.

# Meguiar v. Helm.

91  19
e111  750

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONSTRUCTION OF PARTNERSHIP CONTRACT.—In construing a partnership contract of doubtful meaning, the court will consider the construction placed upon the contract by the partners, as shown by the basis upon which the books of the firm were kept, and settlements made during a long period of time; and where the testimony of one of the partners as to the intention of the parties is consistent with the construction thus placed upon the contract, and that construction is a reasonable one, in view of all the circumstances under which the contract was made, the court will adopt it, although the partners who contend for a different construction may not have been experienced book-keepers, and may have paid but little attention to the books or to the statements submitted to them from time to time.

2. SAME.—Under a contract by which the partner who furnished the capital for a tobacco warehouse partnership was to have, by reason of that fact, " the benefit of the warehouse interest account," he was entitled to the interest on loans made to customers, which was credited to that account, whether paid to the firm or not, settlements having been made upon that basis for a number of years, and it being reasonable to suppose, looking to the circumstances under which the contract was made, that such was the intention of the parties.

3. THE ENTRIES IN THE FIRM BOOKS ARE PRIMA FACIE CORRECT, and the presumption is that they were made by the consent of all the partners, it being the duty of each partner to see that the books are correctly kept.

4. IN ASSESSING PARTNERSHIP PROPERTY FOR TAXATION it is not proper to list each partner's capital or profit, and require each to pay on his individual account.   The firm, as such, must pay the taxes.

WILLIAM LINDSAY AND BROWN, HUMPHREY & DAVIE FOR APPELLANT.

Where the terms of a partnership, being in parol, are doubtful, either in language or construction, the conduct of the partners in carrying on the business and the entries upon the books will largely influence the court in determining the true meaning and effect of the partnership agreement.   (2 Bate on Partnership, secs. 978, 981; 1 Bates on Partnership, sec. 215; Moore v. Treivier, 31 Ark., 113.)

To work an estoppel against a particular construction, it is not necessary that the party should have knowingly misled.   He may be

be estopped if he negligently misleads. (Graves v. The Bank, 10 Bush, 25; Bank v. Morgan, 117 U. S., 96.)

Taxes paid by a firm upon its assets should be charged to expense, and not distributed between the partners in proportion to their capital in the firm. (2 Bates on Partnership, sec. 276.)

This method having been pursued for a number of years, none of the partners can object to it. (Pollock on Contracts, sec. 392; Chicago v. Sheldon, 9 Wallace, 54.)

HELM & BRUCE, J. S. PIRTLE FOR APPELLEE.

1. The method of keeping the books adopted by the book-keeper has the effect of making Helm and Wilson pay to Meguiar not only the prevailing rates of interest on the money advanced by him, but also on moneys loaned out by the firm, which did not come from Meguiar at all, or from his exclusive credit.

2. In view of the undisputed evidence in the case that Helm did not know of the method of keeping these books until after the dissolution (the principal part of his time being taken up with work outside of the office), he is not now estopped from asking to have the accounts corrected. None of the elements of estoppel, as stated by Bigelow, and as recognized by this court in Rudd v. Matthews, 79 Ky., 483, exists.

3. Nor can it be said that appellant has acquiesced in the method of keeping the books. The authorities are clear that in a case of this sort the acquiescence, in order to affect a person, must be with knowledge of the wrongful acts complained of, and of their injurious consequences. It must also be voluntary, and not the result of accident, and the acquiescence must last for an unreasonable length of time, so that it will be inequitable, even to the wrong-doer, to enforce equitable remedies against him. (Pomeroy's Equity Jurisprudence, secs. 817 and 965; De Bussche v. Alt. L. R., 8 Ch. D., 286, 314; Perry on Trusts, vol. 2, sec. 870; Story's Equity, secs. 1533, 1536; Bigelow on Estoppel, pages 524, 525.)

4. There is nothing in the claim that a practical construction had been placed on the contract.

In order for a contract to be practically construed by the parties to it, it must appear that the parties had in contemplation, when committing the act construed into a practical construction, the nature of the contract and the identical question which it is claimed was settled by the practical construction.

5. Either party is at liberty to impeach the books kept by the firm book-keeper by showing error. (O'Brian v. Hanly, 86 Ill., 276; United States Bank v. Binney, 5 Mason, 188; Taylor v. Herring, 10 Bosw., 447; Hutchison v. Smith, 5 Irish Equity; Collyer on Partnership, p. 302, Perkins' note; Withers v. Withers, 8 Peters, 355.)

7. Meguiar, being the office man of the firm, gave in the assets of the

firm for taxation, and, in doing so, made the firm pay the taxes on the large sum loaned by him to it. This was wrong. Under the statutes then in force the firm was entitled to *deduct* the amount it was indebted to Meguiar from the value of its estate taxable under the equalization law.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the month of January, in the year 1877, the appellant, P. Meguiar, and the appellee, John L. Helm, together with W. M. Wilson, entered into a verbal agreement by which they became partners, under the style of Meguiar, Helm & Co., in the operation of a tobacco warehouse in the city of Louisville for the sale of tobacco. Helm and Wilson had, previous to this agreement, been engaged in the same business with a firm called Ronald, Webb & Co., that firm composed of Ronald, Webb, Helm and Wilson. This last firm was unfortunate in business, and its property had been turned over to the appellant, Meguiar, as the trustee, for the benefit of creditors. It seems that Helm and Wilson, who were connected or had been members of the insolvent firm, being desirous of continuing the business, and having worked up, as it is termed, a large trade for the house, proposed to the appellant, who was a man of means and credit, to go into partnership with them, and upon the first suggestion the preliminaries of the partnership were agreed upon, and the firm of Meguiar, Helm & Co. formed. The settlement of this partnership, it having been dissolved, is the subject-matter of the present controversy.

The terms of the partnership were as follows: They were to share equally in the profits with this ex-

ception: Meguiar, who was the only member of the
firm having at that time money and credit, was to
furnish the capital agreed on, and was to have for
this responsibility or expenditure on his part the *bene-
fit of the warehouse interest account.* The partner-
ship was to last for one year, and to continue from year
to year as might be agreed upon by the parties. It
was a partnership from year to year, as is manifest
from the testimony of Meguiar, Wilson and Tillman.
The appellee, Helm, regarded it as a partnership for
an indefinite period, and while he, no doubt, under-
stood it in that way, the decided weight of the tes-
timony is, that at the end of each year the partners,
or either of them, could continue or dissolve it, as
might be deemed best, that discretion being with one
or all of the firm.   Still, we do not think, in view
of the questions raised, that such a construction of
the agreement would control the decision of the main
question.   The parties to the appeal differ as to the
meaning of the *warehouse interest account,* the ap-
pellant insisting that he was entitled to all the in-
terest credited to that account, whether paid to the
firm or not, and the appellee maintaining that it was
only the profit realized from the account that Me-
guiar was to receive.   It is insisted by the appellant
that the appellee is estopped from now asserting any
such claim as to the wrongful credit to Meguiar of
this interest unpaid, because the entries upon the books
of the firm for the period of near eight years, with
monthly balances and yearly settlements, showing the
interest of each member of the firm, with the amount
of profit or loss, is conclusive as to the right of Me-

guiar as to the interest account, and as to the meaning to be given that part of the agreement.

This action was not instituted until ten years after the formation of the partnership. In the month of September, in the year 1884, more than seven years after the firm had begun business, Meguiar, the appellant, and Helm, the appellee, purchased out the interest of Wilson in all the firm assets, and formed a new firm, bringing into it new partners. This new firm continued for over two years, when the appellee, Helm, ceased to be a member, and, a short time after that, discovered the manner in which the interest account had been kept, and that Meguiar had received credits, in the way of interest, to which he was not entitled.

It appears that the books of the firm were regularly kept; balance sheets made out monthly and examined by each member, and that there was no pretense of concealment or fraud on the part of Meguiar, or any one connected with the firm's business. The clerk seems, during this entire period, to have construed the meaning of the contract without even the suggestion of any of the partners, and to have given Meguiar the benefit of the interest account, whether collected or not. The books must have been examined or the assets ascertained when Wilson sold out in the year 1884. This interest account had been credited to Meguiar up to the date of the dissolution, and there had been no complaint. The appellee says that he was not familiar with book-keeping, and that his business and that of Wilson was to travel through the country and work up the trade for the

house, while Meguiar was the financier and manager of the warehouse; that he was at the warehouse for two years prior to the dissolution, but his attention was not called to the manner in which the books had been kept with reference to the interest account. Wilson seems never to have discovered any error, and for the reason, as he says, no examination was made of the books by him or any one for him, and besides he was not an experienced book-keeper.

It is insisted by the counsel for the appellants that the partners, having construed the contract for themselves by the repeated entries on the books from January, 1877, those entries being continually made from month to month and from year to year until the year 1884, they ought not now be allowed to open the accounts and have a readjustment of balances that contradicts that construction of the contract placed upon it by the partners, as evidenced by those entries. There is no mistake or error shown to have been made by the clerk, but an allegation, after the lapse of ten years from the formation of the partnership, that one of the partners had obtained more than his share of the firm assets by reason of the action of the clerk who made the entries, or the partner causing the entries to be made, placing a different construction upon the contract from that placed upon it by the plaintiff.

It is said in section 981, 2 Bates on Partnership, that its terms, or any alteration therein, or construction put upon them, may be proved by the nature of the charges or entries in the books as conclusively as by any other writing. The entries are *prima facie* correct, and the presumption is, that they

were made by the consent of all the partners, and this assent, says the same author, "is founded on the duty of each partner to avail himself of the opportunity of inspection and the right of access, and see that the books are correctly kept." (Section 978.) Again it is said : "In case of ambiguity in the articles, or want of explicitness, the interpretation of the parties, as shown by their subsequent conduct, will be accepted as the true construction, and in aid of the intent." (Section 215.)

In Moore v. Trieber, 31 Ark., 113, parties had a grocery and dry goods business. A third person furnished the dry goods, and was to have half the profits of that business. The firm was in the habit of advancing money to farmers, and, when paid back, it was first applied to the advances, second to payment for the groceries, and third to the dry goods. As the partner in the dry goods part of the firm never objected to this, when it had been done through a series of years, the court presumed she assented to it, and refused to disturb the mode of settlement.

All the partners had access to the books of the firm. The warehouse interest account is not shown to have been kept in a manner different from such accounts kept in like warehouses. In fact, the interest account was kept as it should have been, and it is urged only that too much of this interest was allowed the appellant. Yearly settlements, or rather balances, were made, showing the profit or loss, and what had been realized for distribution between the partners. When the account or balances showed a profit for either Helm or Wilson, it was credited to

them, and interest at eight per cent. allowed on the amount when used by the firm. Meguiar's part of the profits was also shown, but he looked to the warehouse account for his interest. This interest account was stated, and if it appeared to be too much, the appellee should have complained, and it must be assumed, as a matter of law, that he knew the existence of so many like entries in the books that were subject to his inspection at any time, and that had to be resorted to in order to show the amount of interest the appellee was receiving. That the appellee never examined the books, or paid but little attention to any entry in them, is evident from his statement; but these entries for so long a period, sustained by the evidence of Meguiar, connected with the circumstances under which the contract of partnership was entered into, must, in our opinion, settle the question as to the meaning to be given its terms. The appellee's inducement to enter into the agreement to give to Meguiar the interest account is, that he would not pay a greater rate of interest than would have to be paid to the banks, or that when the principal of the loan was not paid, Meguiar was not to get the interest, doubtless existed in his mind; but, on the other hand, Meguiar was giving to Wilson and the appellee an equal interest in the profits, agreeing to perform as valuable service as they did, and assuming the entire pecuniary responsibility of conducting a business involving in each and every year many thousand dollars. His version, therefore, is, that this advantage was intended to be given him by the agreement. If the meaning placed upon its terms by the appellee

is to prevail, then Meguiar did not get the *warehouse interest account*, but only so much of it as was collected after paying the principal sum that had been advanced ; and not only so, if collected during a series of years, and partial payments credited the borrower, and interest credited to warehouse account at the end of the year, yet if, after that time, the balance of the principal of the advance is lost, the credit of interest previously given Meguiar, or found in warehouse interest account, is to be taken from that account and applied to the payment of the balance of the principal still owing. We think such a construction should not be given the contract, and certainly not when the mode of ascertaining Meguiar's interest had been followed for so many years, and was perfectly consistent with the terms of the agreement.

The warehouse interest account was debited by the interest paid Helm and Wilson on the balance due each; these balance sheets upon which this appeared showed the state of the interest account; the two partners obtained interest on the balances due them; they obtained an equal share with Meguiar in the profits for selling, the commission, the insurance, &c.; were in every way equal partners, except that Meguiar, for his money and credit, was to have the interest account. If, therefore, he paid as capital into the firm fifty thousand dollars, and this was advanced to customers at eight per cent. interest, and only twenty-five thousand dollars was paid back, and the other half lost, Meguiar's loss would be one-third of the loan to customers that had not been repaid, and the entire interest upon it, and all that he could get in the way

of interest would be the interest on the twenty-five thousand dollars that had been paid. This, it seems to us, is not the spirit or meaning of the contract. So it is contended that if the firm had advanced to the farmer twelve hundred dollars, to be paid in tobacco, and out of the first year's crop the farmer had paid six hundred dollars on the advance, and the interest on his advance had been credited to the warehouse account of interest, and the farmer for the next year had failed to pay any of the principal remaining due, but had become insolvent, that the interest already credited to warehouse account should be taken from it and applied to the discharge of the principal remaining unpaid. This view of the contract, we think, can not be sustained. It is argued that it should be, for the reason that Helm and Wilson would sustain two-thirds of the loss, and besides the entire interest on the balance due on this debt. This is doubtless the result based upon a contract that the parties saw proper to make, and for the reason that Meguiar had agreed to perform, and did perform, as much labor as either of the partners in the conduct of the firm, and assumed, in addition, to advance his money and pledge his credit to maintain it. There is no perceptible reason why he should lose the interest and his co-partners still share their one-third each of all the profits. If an advantage was given Meguiar, it was by reason of the contract, and to adopt the view presented by the appellants, the terms of the contract must necessarily be changed.

Again, it appears from the testimony of Wilson, one of the partners, that he and the plaintiff had

talked about the interest account at different times as to its meaning and import, but there was no definite understanding as to what it did mean. The interest was then being credited in the manner claimed by the appellant, who seems never to have heard of any objection to the credits until shortly before this action was instituted—nearly ten years after the first entries of credit to Meguiar began.

There is some suggestion in the record, and perhaps it so appears, that money was borrowed by the firm at eight per cent., and the interest allowed Meguiar was ten per cent. We think this was never contemplated by the parties, and if such an error exists, it should be corrected, but in other respects the entries of interest to the credit of Meguiar should stand.

As to the taxes paid by the appellant, it is evident that he listed with the assessor what belonged to the firm after deducting its debts. It is not a proper mode of assessment to list each partner's capital or profit, and require each to pay on his individual account. If these appellees had borrowed of the Bank of Kentucky one hundred thousand dollars, and placed it in the firm as capital stock, it would then have become firm assets, and the partners sharing in the profit and loss, the firm must pay the taxes. So if Meguiar placed in the firm fifty thousand dollars, and by the terms of partnership the profits were to be divided between the three, the fact that Meguiar had invested more capital, or had to his credit a larger sum than the other partners, affords no reason for making him pay a greater proportion of the taxes than his co-partners ; and in the absence of a special

agreement that· one should pay more than the other, the amount of taxes paid must be debited to the partnership, and to that extent the profits, in which all share equally, will be lessened. Nor is it material whether each partner's interest is equal. If a partnership, the firm, as such, must pay the taxes.

The judgment below is reversed, and remanded for proceedings consistent with this opinion.