LANHAM ET AL. *v.* STATE

[No. 26,235. Filed March 14, 1935.]

*Joseph T. Markey,* and *Jack B. Kammins,* for appellants.

*James M. Ogden,* Attorney-General, *James T. Dowling,* Deputy Attorney-General, and *Merl M. Wall,* Assistant Attorney-General, for appellee.

TREANOR, J.—This is a criminal action commenced by affidavit, in the name of the State of Indiana against Howard Lanham, Noel Lanham, Ruth Lanham, and Ward Lanham, on a charge that the appellants above named being of full age and being financially able, have neglected, without reasonable cause, to maintain and support their father, Frederick Lanham, the said Frederick Lanham being sick and not able to work and not having sufficient means or ability to maintain or support himself.

The trial court found Howard Lanham, Noel Lanham, and Ruth Lanham guilty, as charged in the affidavit and pronounced sentence as follows:

"That each of the appellants be fined in the sum

of one dollar ($1.00), and that they each be imprisoned in the Marion County Jail for a period of sixty (60) days; that sentence was suspended on condition that the appellant Noel Lanham pay into the court the sum of five dollars ($5.00) per week, and that each of the appellants Ruth Lanham and Howard Lanham pay into court the sum of one dollar and fifty cents ($1.50) per week for the support of their father, Frederick Lanham."

The appellants rely upon the alleged error of the trial court in overruling their respective motions for new trials. The grounds specified in support of each motion for a new trial were: "(1) That the finding or decision of the court is contrary to law"; and "(2) that the finding or decision of the court is not sustained by sufficient evidence."

Before considering appellants' contention that the decision of the court is not sustained by sufficient evidence and is contrary to law, it is necessary to determine the scope and meaning of the statute. For that purpose the following provisions are sufficient:

"Hereafter, if any person being of full age and being financially able has neglected, or shall hereafter, without reasonable cause, neglect to maintain and support his or her parent or parents, if such parent or parents be sick or not able to work and have not sufficient means or ability to maintain or support themselves, such person shall be deemed guilty of a misdemeanor and, upon conviction thereof shall be fined in any sum not exceeding five hundred dollars ($500), to which may be added imprisonment in the county jail for a period not exceeding six (6) months. . . . The provisions of this act shall not apply to children who have not lived with or who have not been supported by their parents when such children were minors." §2875, Burns Ann. Ind. St. 1926; §2893, Baldwin's 1934; §10-1410, Burns Ind. St. Ann. 1933; Acts 1921, ch. 31, §1, p. 90; Acts 1923, ch. 15, §1, p. 53.

At common law children have no legal duty to sup-

port parents and the statute in question departs from the common law by imposing such a duty and by making it a criminal offense for a child to neglect "to maintain and support his or her parent, or parents." To be guilty of the misdemeanor which is defined by the statute a child's neglect to maintain and support his parent, or parents, must be without reasonable cause. We understand "reasonable cause" to refer to some fact or facts which exist at the time of the neglect to maintain, or support, and which deprive such act of neglect of any criminal quality. For example, a child might be in ignorance of his parents' need; or the parents might refuse unreasonably to accept the kind of support offered by the children. The neglect of the child to maintain or support must be characterized by wilfullness, but is not excused by reason of the personal conduct of the parent or parents during, or subsequent to, the minority of the children.

It follows that if a parent is physically and financially unable to care for himself, a child of full age, who is financially able to care for such parent, has a legal duty to support the parent; and if the child wilfully refuses to discharge this duty he is guilty of a misdemeanor and punishable in accordance with the terms of the statute.

But the statute expressly excludes from its operation all adult children "who have not lived with, or who have not been supported by their parents when such children were minors." The evident legislative intent was to exempt entirely from its operation children of full age whose parents either had failed to maintain a home for their minor children, or had not furnished, in lieu thereof, support for such children. Since the language of the act does not qualify the clause "when such children were minors" we can not construe

this clause as defining any period of time less than the full minority of the children. Consequently the act applies only to children whose parents either maintained a home for them throughout their minority or, in lieu thereof, supported them in other surroundings.

The evidence was sufficient to justify the trial court's finding that the defendants' father was physically and financially unable to support himself and that the defendants were financially able to care for him. Furthermore, the evidence showed that the defendants knew of their father's condition and refused to support him. Consequently the decision of the court was supported by sufficient evidence and was not contrary to law unless the facts completely exempt the defendants from the operation of the statute.

The evidence discloses that the father made no effort to maintain a home for his children after 1918, at which time the defendants, Howard, Noel, and Ruth Lanaham were fifteen, twelve, and ten years of age, respectively, and their sister, Gracie Mae, was a seven-month-old infant. From January, 1919, to 1926, the father, under a court order, paid $8.50 a week for the support of Noel, Ruth, and Gracie Mae, and from 1926 until 1929, when he became incapacitated, he paid $5.00 a week. When the payments ceased all the children but Gracie Mae were over twenty-one years of age.

There is no evidence to indicate that Howard received any support after October, 1918, nor that he lived with his father after that time. Consequently Howard clearly comes within the exemption of the statute, and, as respects him, the decision was contrary to law.

The evidence is undisputed that from January, 1919, until 1928 or 1929 the father, under a court order, contributed an average of over thirty ($30) dollars a

month to the support of Noel, Ruth, and Gracie Mae. There was evidence to indicate that Noel and Ruth lived with their father until October, 1918, and that thereafter he paid the aforesaid sum during their minority. The evidence shows that during the period from 1918 to 1929 Howard, Noel, and Ruth were contributing to the family support. During the period of minority of Noel and Ruth the amount contributed by the father could not have furnished more than the barest existence for Noel, Ruth, and Gracie Mae. Noel, himself, contributed to the support of the family, including the mother, more than the amount of the court allowance. Chiefly through the earnings of Noel and Howard it was possible for the mother to keep the family together and for Noel, Ruth, and Gracie Mae to continue in school without recourse to public agencies. From October, 1918, to June, 1926, when the father obtained a divorce, Howard and Noel assumed their father's legal duty of supporting their mother.

Since it is clear that the father made no effort to maintain a home for his children after October, 1918, the legal responsibility of defendants, Noel and Ruth, depends upon whether the forced contributions of the father, made under order of court, constituted *support* of Noel and Ruth *when they were minors.*

We are of the opinion that it cannot be said that children have been supported by a parent "when such children were minors," when, as in the instant case, the father has abandoned his family and has left the mother and four minor children to shift for themselves, and when his forced contribution to their support was obviously inadequate to furnish the necessaries of life, including opportunities for at least a common school and high school education; and when the infant children

themselves contributed a substantial portion of the support of the family.

We conclude that the defendants did not live with their father "when they were minors"; and that he did not support them within the meaning of the statute during their minority. Consequently the decision of the trial court was contrary to law and the motions for new trials should have been sustained.

Judgment reversed with directions to the trial court to sustain the defendants' several motions for new trials and for further proceedings not inconsistent with this opinion.

Hughes and Tremain, J. J., concur in result with opinion by Hughes.

Roll, J., concurs in result with separate opinion.

### CONCURRING OPINION

HUGHES, J., TREMAIN, J.—We concur in the result reached by the majority of the court in the foregoing opinion, but we do not agree with them as to the construction placed upon the phrase "without reasonable cause" as used in the statute.

In our judgment, "without reasonable cause" includes the personal conduct of the parent or parents during the minority of the child or children and it is not limited as the majority opinion holds, to some "fact or facts which exist at the time of the neglect to maintain, or support, and which deprive such act of neglect of any criminal quality." For example, if during the minority of the children, as in the instant case, and at a time when they should be in school, and at the formative period of their character, the father abandons them and permits them to shift for themselves as best they can, other than contributing money, under a court order, then in our judgment the children would have reasonable cause, under the statute, to refuse to support their

father although he was sick, unable to work, and support himself, even though they were of full age and financially able to support him.

## CONCURRING OPINION

ROLL, J.—I concur in the reversal of the judgment in this action, but I cannot agree with the reasoning of the majority of the court or the interpretation placed by them upon the statute in question.

There is no sounder or better settled rule of criminal law, than the one relating to certainty and definiteness. From the very nature of things it is altogether necessary that a criminal statute, to be enforcable, must so clearly and so definitely define the crime that every one could be able to determine with certainty when he is violating the statute. This rule of law was very clearly stated by this court in the case of *Railroad Comm., etc.* v. *Grand Trunk, etc., R. Co.* (1913), 179 Ind. 255, 264, 100 N. E. 852, as follows:

"When the legislature undertook to define an offense and provide punishment therefor in this act, it should have expressed itself in plain and specific terms. . . . An act which leaves the crime to be determined by the jury or any official body is void. A penal statute, to be enforcable, must be general in its scope and specific and certain in its provisions."

The Supreme Court of the United States states the rule as follows, in the case of *United States* v. *Reese* (1875), 92 U. S. 214, 23 L. Ed. 563:

"Every man should be able to know with certainty when he is committing a crime."

The Federal Court held in the case of *Tozer* v. *United States* (1892), 52. Fed. 917, 919:

"But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is a criminal or not. The criminality of an act cannot depend upon whether a jury may

think it reasonable or unreasonable. There must be some definiteness and certainty."

And again in the case of *Chicago, etc., R. Co.* v. *Dey* (1888), 35 Fed. 866-867, 1 L. R. A. 744, the court said:

". . . no penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it."

The following authorities sustain the above rule. *United States* v. *Cohen Grocery Co.* (1921), 255 U. S. 81, 41 Sup. Ct. Rep. 298, 65 L. Ed. 516, 14 L. R. A. 1045; *Cook* v. *State* (1901), 26 Ind. App. 278-282-283, 59 N. E. 489; *Louisville, etc., R. Co.* v. *Commonwealth* (1896), 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209; *Stoutenburgh* v. *Frazier* (1900), 16 App. Cas. (Dist. Col.) 229, 48 L. R. A. 220.

With this rule of law in mind, let us examine the statute here under consideration and see if it conforms to the above requirements. In the first sentence of the statute we find the words *"and being financially able."* It will be noted that the statute does not say who or when one is *financially able* to support his or her parents, nor does the statute fix any standard whatever. How and by what means is one to determine in advance, when he is financially able to support his or her parents? The answer to this question is of much importance. You look to the statute in vain for an answer; you consult your own judgment on the matter, but yet you are not satisfied; you talk to your friends, and find they differ on the subject. At last you consult your lawyer, and he must advise you that no one can determine that question but the court or jury trying the case. If this statement is true, under the well settled rule above set out the statute is void for uncertainty.

We also find in this first sentence of the statute the words, *"without reasonable cause."* Again you find no

help in the statute, to determine what is *reasonable cause*. Different people would honestly have different ideas of what constitutes reasonable cause. What one might determine was a reasonable cause, another might honestly think would be far from constituting a reasonable cause. So again the accused must wait for the verdict of the jury, before he can determine whether he is a criminal or not. It is easy to conceive of cases, that would clearly come within or without the terms of this statute. But most of the cases with which the courts will have to deal are not such cases. They are border line cases, in which it is altogether possible to convict a person who acted honestly and in accord with his very best judgment; who desired to be a law abiding citizen and had no intent whatever of violating the law; who made an honest effort to inform himself as to what the law required him to do and acted accordingly. Yet he finds that a jury has convicted him of a crime.

I fully agree with the majority opinion that the words "without reasonable cause" has reference to the existence of some fact or state of facts existing at the time of the alleged offense, that would cleanse the conduct of the accused of its criminal character, and not to relieve him of the duty to support his parents in the future, if the statute can be so construed as to impose such a legal duty.

We desire to call attention to the ambiguity in the exemption clause. This provision says, that the provisions of this act shall not apply to children who have not lived with or who have not been supported by their parents *when* such children were minors. It seems to me that it could be argued with much force that the statute applies to any child who had been supported during any period of its minority. If it was supported by or lived with its parents for a week or a month be-

fore it became twenty-one years old, then it certainly did live with and was supported by its parents *when* it was a minor.

We all appreciate the moral obligation that rests upon children to care for their parents in time of need. This moral obligation, however, should not be a sufficient reason for the court to overstep its proper bounds. "The courts cannot venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a co-ordinate branch of the government. It is far better to wait necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers." *State* v. *West. Side R. Co.* (1898), 146 Mo. 155, 169, 14 S. W. 949. *People* v. *City of Valparaiso* (1912), 178 Ind. 673, 100 N. E. 70.

It is my judgment that the statute under which appellants were convicted is too indefinite and uncertain to be valid, and for that reason I concur in reversing the judgment.