# RAILROAD COMMISSION OF INDIANA *v.* GRAND TRUNK WESTERN RAILROAD COMPANY.

### [No. 22,166. Filed February 18, 1913.]

1.  CONSTITUTIONAL LAW.—*Police Power.—Limitations.*—The police power is inherent in the several states, and, under the Federal Constitution, is left with them and may be exercised by the General Assembly.  p. 259.

2.  CONSTITUTIONAL LAW.—*Police Power.—Nature and Extent of Power.*—The police power must be allowed to expand and take in new subjects from time to time as trade and business advance and new conditions arise, and a large discretion is necessarily vested in the legislature to determine what the interests of the public require and what measures are necessary for the protection of such interests.  p. 259.

3.  RAILROADS.—*Regulation.—Police Power.—Nature and Extent of Power.*—The regulation and control of the entire business of railroads, so far as is necessary to prevent injury to persons or property, even to the extent of regulating the speed of trains and locomotives and the method of switching cars, is within the police power of the State.  p. 259.

4.  CONSTITUTIONAL LAW.—*Police Power.—Nature and Extent of Power.*—The State is intrusted with the duty of enacting and maintaining all internal regulations necessary for the preservation and the prevention of injury to the rights of others, and the United States government can exercise such power of regulation only in those cases where the same is granted to it expressly or by necessary implication.  p. 259.

5.  COMMERCE.—*Interstate Commerce.—Regulation by States.— Validity.*—In the absence of legislation by congress, the State may enact reasonable laws under the police power, which are local in their operation, although they may incidentally affect interstate commerce.  p. 259.

6.  CONSTITUTIONAL LAW.—*Due Process of Law.—Statutes.—Validity.*—The harshness, injustice, and oppressive character of laws enacted by the State will not invalidate them as affecting life, liberty or property without due process of law, if they are within the legitimate sphere of legislative power and their enforcement is attended with the observance of those general rules prescribed by our system of jurisprudence for the security of private rights.  p. 261.

7.  CONSTITUTIONAL LAW.—*Police Power.*—The State under its police power has the right to regulate any and all kinds of busi-

Railroad Com., etc., *v.* Grand Trunk, etc., R. Co.—179 Ind. 255.

ness to protect the public health, morals and welfare, subject to the restriction of reasonable classification. p. 261.

8. CONSTITUTIONAL LAW.—*Subject of Legislation.—Classification.*— A classification of the subjects of legislation must have a reasonable basis on which to stand, and must operate equally upon all and embrace all within the class, and the reason for the classification must inhere in the subject-matter and be natural and substantial. p. 262.

9. CONSTITUTIONAL LAW.—*Police Power.*—It is within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the State has the power to redress and to punish. p. 262.

10. CONSTITUTIONAL LAW.—*Police Power.—Statutes.—Validity.*— A law enacted in the exercise of the police power of the State must be general in its scope and embrace all within the class to which it is intended to apply, must be definite, specific and unambiguous in its provisions and requirements, and must not infringe on the provisions of the Federal Constitution. p. 262.

11. RAILROADS.—*Regulation.—Statutes.—Validity.*—The act approved March 9, 1907 (Acts 1907 p. 353, §§5292-5294 Burns 1908) prohibiting the operation of trains over railroads not equipped with and having in operation "an approved block system" for the control of train movements thereon, conferring on the Railroad Commission power to relieve roads from the obligation if the same can be done without substantial hazard to life and property, enacted at a time when three systems of blocking were in use, is invalid for uncertainty and indefiniteness in failing to specify the block system required. pp. 263, 266.

12. STATUTES.—*Construction.—Supplying Omissions.*—The court in construing a statute cannot supply omissions or remedy defects therein. p. 263.

13. CRIMINAL LAW.—*Statutes Defining Offenses.—Requirements as to Certainty.*—A statute defining an offense and providing a penalty for its violation, to be valid, must be general in its scope, and specific and certain in its provisions, so that one may know in advance what he may and what he may not do under it. p. 264.

14. RAILROADS.—*Regulation.—Statutes.*—The act of 1911 (Acts 1911 p. 466) amending the act of 1907 (Acts 1907 p. 353, §§5292-5294 Burns 1908), and making it unlawful to operate any train or car over any railroad by steam or electric power, unless such road is equipped with and has in operation an automatic block system or other system approved by the Railroad Commission for the control of train or car movements thereon, is general in its

scope as applying to all railroads in the State, and is sufficiently specific and certain. p. 264.

15. STATUTES.—*Construction.—Legislative Intent.*—Where a statute is doubtful or uncertain, other statutes on the same subject, or *in pari materia,* whether passed before or after the statute under consideration, and whether repealed or in force, the history of the country, the condition of affairs, the mischief sought to be remedied, and the object sought to be obtained, will all be looked to in ascertaining the legislative intent. p. 266.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by the Railroad Commission of Indiana against the Grand Trunk Western Railroad Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*L. V. Cravens,* for appellant.

*G. W. Kretzinger* and *Peter Crumpacker,* for appellee.

SPENCER, J.—Appellant sued to recover statutory penalties for the use of the State of Indiana as provided by Acts 1907 p. 353, approved March 9, 1907, §§5292, 5293, 5294 Burns 1908. Complaint is in one paragraph. Demurrer for want of facts sustained. Appellant refused to plead further and the court rendered judgment accordingly. The error assigned is sustaining the demurrer.

The objections urged to the complaint were that the act upon which the complaint was based was unconstitutional, violative of the interstate commerce provision of the Federal Constitution, inoperative, discriminative, ambiguous and void for uncertainty, being penal, for these reasons the provisions thereof could not be enforced. The lower court sustained this theory. Said act, being "An Act to promote the safety of passengers, employes and property in transportation over railroads by steam power", approved March 9, 1907, is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That after the 1st day of July, 1909, it shall be unlawful for any person, firm or corporation, or the lessee or receiver of any person, firm or corporation, which

258 SUPREME COURT OF INDIANA,

Railroad Com., etc., *v.* Grand Trunk, etc., R. Co.—179 Ind. 255.

shall own or operate any line of railroad in this state, to operate any train over such railroad by steam power unless such railroad is equipped with and has in operation an approved block system for the control of train movements thereon: *Provided,* That the provisions of this section shall not apply to any such railroad as shall not have a gross annual income from operation of seventy-five hundred ($7,500.00) dollars or more per mile of line, to be determined from its last preceding annual report to the Railroad commission of Indiana.

"Sec. 2. Power and authority are hereby conferred upon the Railroad commission of Indiana to extend the time specified in section one of this act when it shall be made to appear to it that a reasonable necessity for such extension shall exist, provided that the extension so granted shall not exceed one year. Full power and authority are also conferred upon such commission to relieve any such party from complying with this act as to any branch or spur lines when it shall be made to appear that no reasonable necessity therefor exists. Full power and authority are also hereby conferred upon such commission to relieve any such party from the obligations imposed by section one of this act when it shall be made to appear that the volume of traffic and train movement over any such railroad are such only that the same can be dispatched without substantial hazard to life and property over a line not so protected.

"Sec. 3. Any person, firm or corporation, receiver or lessee who or which shall violate section one of this act shall forfeit and pay to the State of Indiana the sum of one thousand dollars per week for each week that trains shall be operated over any such railroad in violation of such section, the same to be collected by the railroad commission of Indiana by a suit in its name for the use of the State of Indiana in any court of competent jurisdiction."

This law was passed under the police power which is inherent in the several states and is left with them under the

Federal Constitution, and may be exercised by the General Assembly of the State. "The power being such an important and comprehensive one, its application must be expected and allowed to expand and take in new subjects from time to time as trade and business advance and new conditions arise". 22 Am. and Eng. Ency. Law (2d ed.) 922. "The police power of the state extends to the regulation and control of the entire business of railroads, so far as this is necessary to prevent injury to persons or property. * * * The police power also extends to regulating the speed of railway trains and locomotives, and the method of switching cars." 22 Am. and Eng. Ency. Law (2d ed.) 933. The United States Constitution was not intended to restrict, limit or abridge the police power of the states. "Under the police power the State can interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require but what measures are necessary for the protection of such interests". 22 Am. and Eng. Ency. Law (2d ed.) 936. "It may, therefore, be stated as a general proposition that with few exceptions, * * * the police power in the United States is located in the States. The State is intrusted with the duty of enacting and maintaining all those internal regulations which are necessary for the preservation and the prevention of injury to the rights of others. The United States government cannot exercise this power, except in those cases in which power of regulation is granted to the general government expressly or by necessary implication". Tiedeman, Lim. Police Power 613.

"The decisions of the Supreme Court of the United States support the proposition that, in the absence of legislation by congress, the state may enact reasonable laws under the police power, which are local in their operation, although they may incidently affect interstate com-

merce.'' *United States Express Co.* v. *State* (1905), 164
Ind. 196, 204, 73 N. E. 101, cases cited. See, also, *Southern
R. Co.* v. *Railroad Com., etc.* (1913), *ante* 23, 100 N.
E. 337; *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.*
(1908), 171 Ind. 189, 86 N. E. 328; *Pittsburgh, etc., R. Co.*
v. *State* (1909), 172 Ind. 147, 162, 87 N. E. 1034; *Peik* v.
*Chicago, etc., R. Co.* (1876), 94 U. S. 164, 24 L. Ed. 97. The
Supreme Court of the United States has approved the valid-
ity of state laws designed to secure the safety and comfort
of passengers and employes, and regulations intended for the
public welfare. *Cleveland, etc., R. Co.* v. *Illinois* (1900),
177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868. The laws
held valid require locomotive engineers to be examined and
licensed by the state authorities, *Smith* v. *Alabama* (1888),
124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; that such en-
gineers must be examined from time to time as to ability
to distinguish colors, *Nashville, etc., Railway* v. *Alabama*
(1888), 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; for im-
mediate transmission and delivery of telegraph messages,
*Western Union Tel. Co.* v. *James* (1896), 162 U. S. 650, 16
Sup. Ct. 934, 40 L. Ed. 1105; forbidding the running of
freight trains on Sunday, *Hennington* v. *Georgia* (1896),
163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; requiring
railroad companies to fix and publish their rates annually
and post a copy of the same in every station along their lines,
*Chicago, etc., R. Co.* v. *Fuller* (1873), 17 Wall. 560, 21 L. Ed.
710; forbidding the consolidation of parallel and competing
lines of railroad, *Louisville, etc., R. Co.* v. *Kentucky* (1896),
161 U. S. 677, 16 Sup. Ct. 714, 40 L. Ed. 849; regulating
the heating of passenger coaches and placing guard posts on
bridges and trestles, *New York, etc., R. Co.* v. *New York*
(1897), 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; that
no contract shall exempt any railroad corporation from lia-
bility to a passenger, *Chicago, etc., R. Co.* v. *Solan* (1898),
169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; that all tracks
be fenced, cattle guards constructed and speed of locomo-

tives regulated, *Missouri Pac. R. Co.* v. *Humes* (1885), 115
U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; that all trains use
safety couplers, *Gulf, etc., R. Co.* v. *Ellis* (1897), 165 U. S.
150, 157, 17 Sup. Ct. 255, 41 L. Ed. 666; that railroad cor-
porations shall be responsible for damages to property
caused by fire communicated directly or indirectly by loco-
motive engines, *St. Louis, etc., R. Co.* v. *Mathews* (1897),
165 U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611.   Recent decisions
of the Supreme Court of Indiana uphold the validity of
State statutes requiring railroad corporations in this State
to equip their locomotives with automatic bell ringers, *State*
v. *Louisville, etc., R. Co.* (1912), 177 Ind. 553, 96 N. E. 340,
and cars with grabirons, *Southern R. Co.* v. *Railroad Com.,
etc., supra.*   All the above statutes held valid and constitu-
tional by the Supreme Court of the United States and this
State are general in their scope, certain, definite, specific
and unambiguous in their provisions and requirements and
do not leave the persons, firms or corporations to which they
apply in doubt as to their specific requirements.

"If the laws enacted by a state be within the legitimate
sphere of legislative power, and their enforcement be at-
tended with the observance of those general rules
6. which our system of jurisprudence prescribes for the
security of private rights, the harshness, injustice,
and oppressive character of such laws will not invalidate
them as affecting life, liberty or property without due proc-
ess of law." *Missouri Pac. R. Co.* v. *Humes, supra,* 520.

"The state under its police power has the right to
7. regulate any and all kinds of business to protect the
public health, morals and welfare, subject to the re-
striction of reasonable classification". *Hirth-Krause Co.* v.
*Cohen,* 177 Ind. 1, 97 N. E. 1.   See, also, *Walker* v. *Jameson*
(1895), 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R.
A. 679, 683, 49 Am. St. 222; *Adams Express Co.* v. *State*
(1903), 161 Ind. 328, 67 N. E. 1033; *Seelyville Coal, etc.,
Co.* v. *McGlosson* (1906), 166 Ind. 561, 77 N. E. 1044, 117

Am. St. 396, 9 Ann. Cas. 234; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823, 18 Ann. Cas. 1046; *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114, 33 L. R. A. (N. S.) 973. "Where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state". Art. 4, §23, Constitution of Indiana. "It is also well settled, however, that in making a classification of the subjects of legislation the classification must have some reasonable basis on which to stand, and must operate equally upon all within the class and the reason for the classification must inhere in the subject-matter, and must be natural and substantial. A proper classification must also embrace all within the class to which it naturally belongs." *Hirth-Krause Co.* v. *Cohen, supra.* See, also, *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418, and cases cited.

It is within the power of the state to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the state has the power to redress and to punish.

From the public nature of railroad industry and the interest which the general public has in its operation, it is essential that the regulation thereof, for the protection of life and property, rests within the police power of the state within which the railroad is operated. However, the state, in exercising this power, must be reasonable, certain and definite in its laws and not infringe upon the provisions of the Federal Constitution. When the legislature enacts a law exercising the police power of the state, such law must be general in its scope and definite, specific and unambiguous in its provisions and requirements. It must apply generally to every person, firm or corporation operating the industry to which such an act is intended to apply, and definite, specific and certain in its requirements for the protec-

tion of persons and property. This is essential in order to know when the provisions of such a law are being violated.

The complaint charges appellee with not having "an approved block system to control its train movements". What did the legislature mean by the term, "approved block system"? It is insisted that at the time this law was passed the railroads of Indiana were using three systems of blocking, (1) an electric automatic block, (2) telegraphic manual block, and (3) telegraph orders from station to station along their lines. This does not appear by the complaint, herein, but can be readily ascertained to be the true condition existing at the time of the passage of this act from an investigation as to the condition of railroads in Indiana. Did the term "approved block system" apply to any of these three systems, or to some other system to be adopted? As to this question the act is uncertain and indefinite. It would be an unreasonable burden to require a railroad company to install any expensive block system without being reasonably certain that it was complying with the requirements of the law. Under this act, unless the block system installed, met the approval of the Railroad Commission of Indiana the railroad could be sued for penalties and compelled to take the system out and install another with equal uncertainty. It was the province of the legislature to say what kind of a blocking system should be used, as it did state in the amended act (Acts 1911 p. 466). Words essential to make this provision of the statute certain and definite in order that the Railroad Commission could enforce it justly, seem to have been omitted. "The courts cannot venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a coördinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their con-

264 SUPREME COURT OF INDIANA,

Railroad Com., etc., *v.* Grand Trunk, etc., R. Co.—179 Ind. 255.

stitutional powers". *State* v. *West Side St. R. Co.* (1898), 146 Mo. 155, 14 S. W. 959; *Peoples* v. *City of Valparaiso* (1912), 178 Ind. 673, 100 N. E. 70.

When the legislature undertook to define an offense and provide punishment therefor in this act, it should have expressed itself in plain and specific terms. "Every man should be able to know with certainty when he is committing a crime". *United States* v. *Reese* (1875), 92 U. S. 214, 23 L. Ed. 563. "In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." *Tozer* v. *United States* (1892), 52 Fed. 917. "No penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it." *Chicago, etc., R. Co.* v. *Dey* (1888), 35 Fed. 866, 876, 1 L. R. A. 744. An act which leaves the crime to be determined by the jury or any official body is void. A penal statute, to be enforceable, must be general in its scope and specific and certain in its provisions.

The legislature of 1911 amended the act of 1907, *supra.* The title to the amended statute (Acts 1911 p. 466, §4) reads: "An act to promote the safety of passengers, employes, and property, in transportation over steam and interurban railroads, to install block signals and providing penalties for violation of said act". Section 1 of the act as amended (Acts 1911 p. 466) reads: "Be it enacted by the general assembly of the State of Indiana, That section 1 of the above entitled act is amended so as to read as follows: Section 1. That after the first day of January, 1912, it shall be unlawful for any person, firm or corporation, or lessee or receiver of any person, firm or corporation, which shall own or operate any line of steam or interurban railroad in this state to operate any train or car

over such railroad by steam, by electric power or other power, unless such railroad is equipped with and has in operation an automatic block system or other system approved by the railroad commission of Indiana, for the control of trains or car movements thereon, unless the time therefor be extended by such railroad commission''.

Section 2 of this act was amended to read: ''* * * Full power and authority are also hereby conferred upon such commission to relieve any such carrier from the obligations imposed by section 1 of this act when it shall be made to appear that the volume of traffic, or train or car movement over such railroad are such only that the same can be dispatched without substantial hazard to life and property over a line not so protected. Full power and authority are also hereby conferred upon such commission to permit, authorize and order in place of the automatic block, either a controlled manual block, or a manual block, or a dispatcher's block, or any other form of block or other signaling system that is or may be hereafter devised or used, if in the judgment of such commission it shall be made to appear that a controlled manual block, or a manual block, or a dispatcher's block, or any other form of block or other signaling system now or hereafter devised or used shall reasonably conserve the safety of life and property, and whenever such order is made by the railroad commission, and such other form of block or other signaling system is installed, operated and maintained in obedience to such order, it shall be taken and held as a full compliance with this act.'' Section 3 of the amended act provides for the same penalty as the original act.

The above statute, as amended, is general in its scope as applying to all railroads ''in this state'', whether operated by steam or electrical or any other power. The act specifies that all such railroads shall be equipped with an ''automatic block system or other system approved by the railroad commission of Indiana''. Section 2 authorizes the placing of

the ''automatic block, either a controlled manual block, or a manual block, or a dispatcher's block, or any other form of block or other signaling system that is or may be hereafter devised or used''. Under these provisions a person, firm or corporation operating a railroad in Indiana knows with sufficient certainty when this act is being violated.

If a statute is doubtful or uncertain, the circumstances under which it is enacted, other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, as well as other acts *in pari materia,* whether repealed or in force, whether passed before or after the act in question, the history of the country, the conditions of affairs, the mischief sought to be remedied, and the object sought to be attained, will all be looked to in ascertaining the legislative intent. *Hyland* v. *Rochelle* (1913), *post* 671, 100 N. E. 842. See, also, *Johnson* v. *City of Indianapolis* (1910), 174 Ind. 691, 699, 93 N. E. 17; *Thorn* v. *Silver* (1910), 174 Ind. 504, 516, 89 N. E. 943, 92 N. E. 161, and cases cited.

It is apparent that the act in question is uncertain and indefinite. Therefore we are constrained to hold that the court, in sustaining the demurrer to the complaint, did not commit reversible error. Judgment affirmed.

Note.—Reported in 100 N. E. 852. See, also, under (1) 8 Cyc. 865; (2) 8 Cyc. 864; (3, 11) 33 Cyc. 648; (5) 7 Cyc. 422; (6) 8 Cyc. 1083; (7) 8 Cyc. 866, 1110; (8, 10) 8 Cyc. 1051, 1058; (12) 36 Cyc. 1113; (13) 12 Cyc. 141; 36 Cyc. 969; (14) 33 Cyc. 648; 36 Cyc. 969; (15) 36 Cyc. 1147. As to the police power in respect to state regulations tending to promote public health, safety or morals, see 93 Am. St. 409, 138 Am. St. 1007.