PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* RAILROAD COMMISSION OF INDIANA.

[No. 21,237. Filed November 20, 1908.].

1. STATUTES.—*Construction.*—*Constitutional Law.*—*Railroad Commission.*—*Powers.*—Subdivision (1), §5533 Burns 1908, Acts 1907, p. 454, §3, requiring all intrastate carriers to construct necessary interchange tracks will be construed so as not to conflict with constitutional inhibitions. p. 200.

2. RAILROADS.—*Public Regulation.*—*Constitutional Law.*—Property invested in railroads, though protected by the federal and state Constitutions, is devoted to a public use, and is subject to reasonable public regulation. p. 201.

3. SAME.—*Construction of Interchange Tracks.*—*Loss of Business.*—A railroad company may be compelled to construct an interchange track, though such construction will divert some of its business to competing roads. p. 202,

4. RAILROADS.—*Nature of.—Highways.*—Railroads are public high-
ways. p. 203.

5. SAME.—*Regulation by Railroad Commission.*—The railroad com-
mission is the chosen agent of the legislature, and orders made by
it will be interfered with by the courts only where a clear case
of invalidity is shown, the presumption in favor of the commis-
sion's acts being strong. p. 205.

6. PLEADING. — *Complaint.—Uncertainties.—Presumptions.*—Where
a complaint is uncertain, the presumptions are against the plain-
tiff. p. 205.

7. SAME. — *Complaint.—Allegations.—"Necessary."*—An allegation
in a complaint, that the land described was "necessary" to enable
the plaintiff railroad company to handle its traffic, means that
such land would be reasonably convenient. p. 205.

8. SAME.—*Complaint.—Allegations.—"Needs."*—An allegation that
plaintiff railroad company "needs" certain land for its terminal
facilities, if not a mere recital, is indefinite in degree. p. 206.

9. RAILROADS. — *Interchange Tracks. — Railroad Commission.* — A
railroad commission's order for certain railroads to build an in-
terchange track at a certain place is not unreasonable because it
will interfere, or increase the danger, to some extent in placing
additional cars in the yard, or deprive one of such companies
from storing a few more cars on its tracks. p. 206.

10. PLEADING. — *Complaint. — Allegations. — "Practicable." — Rail-
roads.—Interchange Tracks.*—A complaint alleging that it would
be "practicable" to build an interchange track at a designated
place, does not disclose facts sufficient to overcome an order of
the railroad commission ordering such track to be constructed
at another point. p. 207.

11. RAILROAD COMMISSION. — *Dangerous Intersections.* — The rail-
road commission, under §5533 Burns 1908, Acts 1907, p. 454, §19,
has jurisdiction over dangerous railroad and street intersections.
p. 207.

12. SAME.—*Orders.—Court Review.*—The courts will set aside
orders of the railroad commission only upon a plain case of
mistake or abuse of power. p. 207.

13. SAME.—*Orders.—Cost and Benefits.—Court Review.*—Mere cost
of the property used and want of benefit to the railroad com-
pany objecting to the railroad commission's order are not suffi-
cient for an overthrow of such order by the courts. p. 207.

14. CONSTITUTIONAL LAW.—*Police Power.—Compensation.—Rail-
road.—Interchange Tracks.*—An order of the railroad commission
compelling the plaintiff railroad company to construct an inter-
change track, using part of its land therefor, does not compre-
hend the appropriation of property without compensation, but is
a valid exercise of the police power which requires no compensa-
tion. p. 208.

## MAY TERM, 1908. 191

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

15. RAILROADS.—*Interchange Tracks.—Using Property Devoted to Public Use.*—Railroad companies may be ordered by the railroad commission to use parts of their rights of way upon which to construct interchange tracks, where such orders are reasonable under the circumstances.  p. 208.

16. RAILROAD COMMISSION.—*Orders.—Retention of Jurisdiction.— Cost of Constructing Interchange Track.*—Where the railroad commission orders the construction of an interchange track, retaining jurisdiction of the parties to settle any disagreements as to "questions of expense, trackage, interchange or other matters," the complaining company, as to costs, should apply to such commission to determine its proper share thereof, and not to the courts to restrain the execution of the order.  p. 209.

17. RAILROADS.—*Use of Right of Way for Interchange Track.— Compensation.*—Where one company has been compelled by the railroad commission to furnish the greater part of the track and right of way for an interchange track, the presumption is that it will be compensated therefor in the switching or transfer charges, such commission having the right to adjust the costs of construction equitably.  p. 209.

18. SAME.—*Interchange Tracks.—Title.—Use.*—Where an interchange track is built upon the right of way of one company, the title thereto remains in such company, and it is entitled to the use of such track where it is not needed for the interchange business.  p. 209.

19. SAME.—*Interchange Tracks.—Interstate Commerce Act.*—An order of the railroad commission requiring the plaintiff railroad company to use a part of its yard for the construction of an interchange track does not violate the interstate commerce act (24 Stat. p. 380, §3, 3 U. S. Comp. Stat. 1901, p. 3155), providing, among other things, that such act "shall not be construed as requiring any such common carrier to give the use of its track or terminal facilities to another carrier engaged in like business," such clause being designed to restrain the generality of the preceding language.  p. 210.

20. RAILROAD COMMISSION.—*Orders.—Interstate Commerce.—Regulation.*—Orders of the railroad commission requiring railroads doing an interstate as well as intrastate business to construct interchange tracks does not constitute a regulation of interstate commerce in such sense as necessarily to invalidate its orders.  p. 211.

21. SAME.—*Orders.—State Question.*—The proper construction of an order of the railroad commission is a question for the state courts, and such construction must be consistent with the act creating such commission, thus applying to intrastate commerce alone.  p. 212.

192 SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

22. RAILROAD COMMISSION.—*Statutes.*—*Interstate Commerce.*—The railroad commission act giving power to such commission to compel the construction of interchange tracks, facilitates rather than hinders interstate commerce. p. 212.

From Superior Court of Marion County (74,686) ; *Vinson Carter,* Judge.

Suit by the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company against the Railroad Commission of Indiana. From a judgment for defendant, plaintiff appeals. *Affirmed,*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.
*Charles E. Shiveley* and *Ray K. Shiveley,* for appellee.

GILLETT, C. J.—Appellant instituted this suit to enjoin the Railroad Commission of Indiana from enforcing, or attempting to enforce, an order requiring· appellant to put in a certain interchange track, connecting it with a track of the Chicago, Cincinnati & Louisville Railroad Company, and requiring said companies to interchange business with each other in car-load lots. So far as material for present purposes, it may be said that the first paragraph of the complaint, after showing that appellant, a consolidated railway corporation, organized and incorporated under the laws of the states of Indiana, Illinois, Ohio, West Virginia and Pennsylvania, owns and operates lines of railroad in all of said states, among others a line extending from Pittsburg, in the state of Pennsylvania, through the city of Richmond in this State, to the city of Indianapolis, and is a common carrier of freight, on said line of railroad, in and among said states, alleges that, in a certain proceeding then pending before it, said commission, after a hearing, made a final order in certain words and figures. This order, omitting its title, is as follows: ''This case having been heard and considered, and the commission being fully advised in the premises, it is ordered that the respondents herein shall, on and after December 1, 1907, interchange business with each other in car-load

lots at the intersection of their railroads in the city of Rich-
mond, Indiana. It is further ordered that the respondent
Pittsburgh, Cincinnati, Chicago & St. Louis Railway Com-
pany shall, within sixty days from the date of this order,
construct and put in a track to be used for said interchange
of cars between said respondents' lines, and shall join said
track to and connect it with the respondent Chicago, Cincin-
nati & Louisville Railroad Company's exchange track, now
constructed, said track to connect at said point of junction
about ten feet west of the west line of Fourth street and
about eighty feet north of the north line of North street, and
leading out of the Chicago, Cincinnati & Louisville Railroad
Company's main track with a curvature of sixteen degrees
to the right, and up an ascending grade of two and five-
tenths per cent, and to have a capacity of not less than eight
cars. Said track is shown and designated by letters and fig-
ures as follows: 'Capacity, eight cars; 16 degrees curve,
grade two and five-tenths per cent.' And in red lines, on
Pittsburgh, Cincinnati, Chicago & St. Louis Railway Com-
pany's print dated June 15, 1906, showing respondent's ad-
dition to Richmond freight yard, and said print is attached
to, and so far as applicable is made a part of, this order. It
is further ordered that jurisdiction is retained in this pro-
ceeding to determine, if necessary, between said respondents,
if they cannot agree, any question of expense, trackage, in-
terchange or other matters pertinent to this proceeding and
within the jurisdiction of this commission. And it is further
ordered that jurisdiction is retained for the purpose of en-
forcing, if necessary, compliance with the law and this order
by appropriate actions for penalties and mandates.''

After setting out said order, the paragraph alleges the
following additional facts: ''Plaintiff further avers that
said interchange track will be about 500 feet in length, 400
feet of which will be upon the land of the plaintiff, and that
the land upon which said order requires the interchange

194 SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

track to be located and constructed is a part of a larger tract of land bounded on the north by plaintiff's main and side-tracks, on the south by North D street, on the east by Sixth street, and on the west by Fourth avenue, the Chicago, Cincinnati & Louisville Railroad and the Whitewater river; that the plaintiff is, and for more than a year past has been, in possession of all of said land and the owner in fee simple thereof; that said tract of land was purchased by the plaintiff for a large sum of money, to be used in the operation of its freight yard and terminals for the handling of its traffic at the city of Richmond; that all of said land is necessary to enable the plaintiff to handle its said traffic at the city of Richmond, and to discharge its duties as a common carrier; that, before the commencement of said proceeding before said commission, plaintiff had, by the expenditure of a large sum of money, located, and was operating upon said tract of land, a large number of tracks, platforms, sheds, buildings and other structures constituting its terminal facilities necessary to the proper handling of said traffic, and, prior to the commencement of said proceeding before said commission, plaintiff had laid out and planned the construction of additional tracks upon said land; all of which additional tracks are, or in the near future will be, needed by the plaintiff for terminal facilities for the handling of plaintiff's traffic at that point; that the track required to be constructed by said order of the commission, if constructed, will occupy the land upon which the plaintiff's said additional tracks are laid out and planned to be constructed, and will deprive plaintiff of the use of said additional tracks and the land upon which they would be constructed, and require the plaintiff to surrender to, and for the use of, said Chicago, Cincinnati & Louisville Railroad Company the part of plaintiff's land which it has purchased and needs for its terminal facilities to handle its traffic and discharge its duties as a common carrier of commerce over its lines of railroad be-

MAY TERM, 1908. 195

Pittsburgh, etc., R. Co. v. Railroad Com., etc.—171 Ind. 189.

tween said states as aforesaid. Plaintiff further avers that by reason of the advantageous location of plaintiff's railroad tracks, sidings and switches, at said city of Richmond, more than eighty-two per cent of all car-load business in and out of said city is handled by the plaintiff upon its tracks, sidings and switches; that the construction and operation of said interchange track, as prescribed by said order of the commission, will, by reason of the location of plaintiff's main tracks, its sidings and switches of said freight terminal yard, and the congested condition of the traffic upon said tracks and in said yard, greatly interfere with the operations on and about the sidings and switches of said freight terminal yard, and will also interfere with and endanger the movement of passenger- and freight-trains upon the plaintiff's said main tracks adjacent to said yard and its passenger station at the city of Richmond; that the main track of said Chicago, Cincinnati & Louisville Railroad Company crosses the plaintiff's railroad under grade almost at right angles, and runs along and upon a narrow strip of land between the western boundary of said tract of land, so acquired by the plaintiff for its terminal freight yard, and the Whitewater river; that, by reason of said location of said crossing of the main track of said Chicago, Cincinnati & Louisville Railroad Company and said Whitewater river, which river at that point runs in a deep gorge, it is impossible for the plaintiff or said Chicago, Cincinnati & Louisville Railroad Company to acquire, by appropriation or otherwise, any additional land at the junction of said railroads upon which to construct said interchange track; that it is practicable to construct and operate an interchange track between the roads of the plaintiff and said Chicago, Cincinnati & Louisville Railroad Company a short distance north of the junction of said railroads, which track, if there located, would be convenient for both of said companies, and for the handling of the business of their patrons, and plaintiff is willing and

196     SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

ready to join said Chicago, Cincinnati & Louisville Railroad Company in the construction and operation of an interchange track at said place; that the construction of said interchange track will cost the plaintiff $3,000; that the land on which it is ordered to be constructed is of the value of $2,000 to the plaintiff, and that the use of said track would be of no value or benefit to the plaintiff.'' The paragraph then alleges that the act of the General Assembly approved March 9, 1907 (Acts 1907, p. 454, §§5531-5538, 5540-5545, 5548-5551, 5553, 5555 Burns 1908) is void so far as said act requires, or authorizes said commission to require, the construction of said track as ordered, because it takes the plaintiff's property without just compensation and without due process of law, and denies to the plaintiff the equal protection of the laws, and because said act is in contravention of section three of the act of congress to regulate commerce, approved February 4, 1887 (24 Stat., p. 379, 380, 3 U. S. Comp. Stat. 1901, p. 3155), as modified by an act approved June 30, 1906 (34 Stat., p. 584, §1, U. S. Comp. Stat. Supp. 1907, p. 892).

The second paragraph of the complaint appears to be substantially the same as the first, except that the second assails the order on the further ground that it will take the property of the plaintiff, which is already appropriated to a public use, and appropriate it to another and different use.

Upon the direction of this court, there has been filed with the record, by appellant's counsel, the map referred to in said order (the map appearing to be a part thereof), and the following attempted reproduction of the greater part of the west end of said yards, while perhaps not wholly accurate, will at least serve to give some idea of the relation of the tracks, constructed and proposed to be constructed, to the interchange track in question:

MAY TERM, 1908. 197

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

(The track marked "capacity 4 cars, grade three and six-tenths per cent" appears on the original map in red ink, and we infer that it was no part of appellant's plans.)

Subdivision (1) of section three of an act of the General Assembly approved March 9, 1907 (Acts 1907, p. 454, §5533 Burns 1908), is as follows: "All such carriers, handling freight in car-load lots, at all points in this State, where they connect with, or cross at, over or under grade, the line or lines of any one or more carriers engaged in like business, shall construct and maintain proper interchange tracks and switches at all such points so that car-load traffic may be conveniently interchanged between such carriers at such points, and for the purpose of enabling such carriers to comply with this requirement they are empowered to jointly purchase and own, or appropriate under the present or future laws of this State concerning the exercise of the powers of eminent domain, any additional lands or property

198 SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

necessary to enable them to comply with this requirement: Provided, that upon a sufficient showing the commission may relieve any such carrier from the operation of this provision until such time as the necessity therefor shall arise. In case such connecting carriers cannot agree as to the division of the expense of making and maintaining any such facilities and tracks, the commission, upon application therefor, shall determine the same.''

Subdivision (m) of §5533, *supra,* is as follows: ''Every such connecting carrier shall, upon the order of the commission made upon complaint filed and after a hearing is had, as provided in this act, receive from its connecting lines at junction points, all car-load shipments tendered by any such connecting line, and upon payment of reasonable transfer or switching charges therefor, shall transport such car over its tracks and deliver the same to the consignee on his private track connected with such tracks. Every such connecting carrier at junction or terminal points, upon like complaint, proceedings and order of the commission, as provided in this paragraph, shall accept from any other connecting carrier any empty car there tendered, and upon payment of a reasonable switching charge therefor, shall transport such empty car to any industry or private track connected with its line at such junction or terminal point for loading, and return the same when loaded to the line making such delivery: Provided, that any such carriers shall not be required to perform such switching services in any case where such carrier can transport the freight to destination and point of delivery with reasonable dispatch, and at the same rate as the line offering the car, and shall at the time offer the car and be prepared to perform the services. Every carrier subject to the provision of this act who shall receive a car or cars belonging to another carrier at a terminal or junction point, shall, upon the demand of the owner of such car or cars, promptly return the same loaded or empty to such terminal or junction point by the most direct available route,

MAY TERM, 1908. 199

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

and any court of competent jurisdiction shall, upon proper application, have full power and authority to enforce this requirement.''

Subdivision (n) of §5533, *supra*, reads thus: ''All railroad companies doing business in this State shall, upon the demand of any person or persons interested, establish reasonable joint rates for the transportation of freight between points upon their respective lines within this State, and shall receive and transport freight and cars over such route or routes as the shipper may direct. Car-load lots shall be transferred without unloading into other cars, unless such unloading into other cars shall be done without charge therefor to the shipper or receiver of such car-load lots, and unless such transfer be made without unreasonable delay; and less than car-load lots shall be transferred into the connecting railway's cars at cost, which shall be included in and made a part of the joint rate adopted by such railway companies, or established as provided in this act.''

In the first part of §5533, *supra*, the commission is given power to require and supervise the location and construction of connections between railroads, and to adopt all necessary rules and regulations governing the transfer and switching of cars from one railroad to another at junction points. Authority is given to the commission by said section to regulate rates, including joint rates, transfer and switching charges, and to determine, in case of disagreement, what is a fair and just division of the charges for the transportation of freight over connecting lines.

Provision is made by section four of said act (§5534 Burns 1908) for notice and a hearing, before the commission makes any order, concerning rates, or rules and regulations concerning the transfer or switching of cars from one railroad to another, or ''respecting the location or construction of sidings and connections between roads.'' By subdivisions (b) and (c) of section seven of said act (§5537 Burns 1908) provision is made for the enforcement by the commission of

200    SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

the duties of common carriers subject to the provision of the act, on complaint and notice, and for the authority to grant a rehearing in any case in which a final order has been made, or to alter, change or modify such order.    By subdivision (e) of §5533, *supra,* the commission is empowered to adopt and enforce such rules, regulations and modes of procedure as it may deem proper, and by section six (§5536 Burns 1908) provision is made by which a dissatisfied carrier may institute an action to set aside or suspend final orders in cases like the one before us.

Counsel for appellant state at the outset of their argument: ''We concede the power and authority of the commission to require the construction of interchange tracks in certain cases and on proper terms and conditions, but we deny its power or authority to require the construction of the interchange track in question upon the facts averred in the complaint and conditions prescribed by the order.''

Relative to the requirement of the statute that interchange tracks be constructed, as well as to the authority of the commission based thereon, it is not necessary to affirm that in all conceivable circumstances the statute 1. will be enforced.    On the contrary, since in the recognition of such exceptions, if any, as may be necessary to give the statute a constitutional operation, there would still remain in such a case as this the sanction of the legislative will, we would have no hesitation in so limiting the statute in particular cases as to keep it within constitutional bounds. *United States Express Co.* v. *State* (1905), 164 Ind. 196; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §385; *Tsoi Sim* v. *United States* (1902), 116 Fed. 920, 54 C. C. A. 154; *Commonwealth* v. *Gagne* (1891), 153 Mass. 205, 26 N. E. 449, 10 L. R. A. 442; *Colquhoun* v. *Heddon* (1890), 24 Q. B. D. 491.

The validity of the claim that in this case there is a taking of property without just compensation, or a deprivation of property without due process of law, or a denial of the equal

protection of the laws, depends almost wholly upon whether it is shown that in the upholding of the order, so far as its terms are fixed, there is an unreasonable interference with appellant in the enjoyment of its property rights.

Notwithstanding the concession of counsel as to the valid-ity of the statute as applied to ordinary cases, it will be helpful to consider the nature of the duty enjoined, in the determination of the question whether, in the particular instance, it is shown that any constitutional right has been invaded.

In one sense of the term appellant's property is private, and as such it is within the protection of the federal and state Constitutions; but such property is subject to
2.   due regulation, since it has been devoted to a public use, particularly since that use is, in a limited sense of the term, for the purposes of a public highway. *Lake Superior, etc., R. Co.* v. *United States* (1876), 93 U. S. 442, 23 L. Ed. 965. As was said in *Barton* v. *Barbour* (1881), 104 U. S. 126, 135, 26 L. Ed. 672: "A railroad is authorized to be constructed more for the public good to be subserved than for private gain. As a highway for public transportation it is a matter of public concern, and its construction and management belong primarily to the commonwealth, and are only put into private hands to subserve the public convenience and economy. But the public retain rights of vast consequence in the road and its appendages, with which neither the company nor any creditor or mortgagee can interfere. They take their rights subject to the rights of the public, and must be content to enjoy them in subordination thereto."

While railroad companies are chartered for the purpose of affording due facilities for transportation, yet at the common law there are certain obligations of an imperfect character which have been left to such carriers, upon the presumption that their business interests will cause them sufficiently to discharge such duties, as in the building of interchange

freight tracks, the erection of depots, and the like. It is clear, however that the legislature, which possesses the right to make all manner of reasonable and wholesome laws within constitutional limits, may, to the extent of that which is reasonable, convert such imperfect obligations into absolute legal duties. *Minneapolis, etc., R. Co.* v. *Minnesota* (1904), 193 U. S. 53, 24 Sup. Ct. 396, 48 L. Ed. 614.

*Wisconsin, etc., R. Co.* v. *Jacobson* (1900), 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, was a case in which, in addition to the element of cost, the objection was made 3. to the enforcement of an order for a track connection, and for the interchange of freight, that the carrying out of the order would divert certain freight business theretofore carried by the plaintiff in error to its competitor, since such business, if so routed, would not have to be carried so far to reach the market. In passing upon these objections the court said: "These are the facts upon which the plaintiff in error must rest its argument, that to enforce the judgment would compel it to pay its share of the cost of the construction of a track to be used for the purpose of depriving the company of its traffic, and transferring it to its competitor. The facts do not afford a fair foundation for the argument. * * * Can it be possible that a railroad chartered and built primarily for the accommodation and in the interests of the public can under such facts, legally refuse the track connections directed in this case? Can it refuse to obey the commands of the legislature in such a case upon the sole ground that it may thereby somewhat lessen the earnings of its road? * * * We think these questions should receive a negative answer. The interests of the public should not be thus wholly, and, as it seems to us, unjustifiably ignored. * * * Although to carry out the judgment may require the exercise by the plaintiff in error of the power of eminent domain, and will result in some, comparatively speaking, small expense, yet neither

fact furnishes an answer to the application of the defendant in error."

In *Atlantic Coast Line R. Co.* v. *North Carolina Corp. Comm.* (1907), 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, which arose out of an order requiring the railroad company to restore a train connection for the accommodation of a large number of people traveling between the eastern and western part of the state, it was contended that, as the carrying out of the order would require the operation of a train at a loss, the order was void, as in violation of the company's constitutional rights, even if the loss so occasioned would not have the effect of reducing the aggregate net earnings of the company below a reasonable profit. The court, however, in distinguishing the case before it from cases directly involving the validity of orders reducing rates, said: "The distinction between an order relating to such a subject and an order fixing rates coming within either of the hypotheses which we have stated is apparent. This is so because, as the primary duty of the carrier is to furnish adequate facilities to the public, that duty may well be compelled, although by doing so as an incident some pecuniary loss from rendering such service may result. It follows, therefore, that the mere incurring of a loss from the performance of such a duty does not in and of itself necessarily give rise to the conclusion of unreasonableness."

When the case of *Wisconsin, etc., R. Co.* v. *Jacobson, supra,* was before the Minnesota supreme court (*Jacobson* v. *Wisconsin, etc., R. Co.* (1898), 71 Minn. 519, 74 N. W. 893, 40 L. R. A. 389), that court, in discussing the power of the state reasonably to regulate railroad companies in the matter of interchanging freight, said: "These two railroads are public highways, and all of these objections amount simply to this: It is wholly foreign to the purpose of two public highways of the same character to require them to connect where they cross each other, so that

204    SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

public traffic may pass from one to the other. And, where a private corporation has been chartered to construct, maintain and operate such a public highway, with the right to charge reasonable compensation for its services in so doing, it is a violation of its charter to compel it to connect its highway with another intersecting highway of the same character, unless the right to require connection is expressly reserved in the charter. We cannot so hold.   *   *   *   The legislature chartered appellant to construct, maintain, and operate a public highway, not a *cul de sac,* or something worse, which has no connection with like highways either at its ends or sides. A railroad is an improved highway, on which certain modern appliances are used. It will not, as a general rule, serve fully the purposes for which it was intended, unless the connections between it and other like highways which cross or touch it are improved in like manner, and the same modern appliances are used in passing from one road to the other over those connections.''

In *Burlington, etc., R. Co.* v. *Dey* (1891), 82 Iowa 312, 336, 48 N. W. 98, the supreme court of Iowa, after stating that the business custom of railroad companies to transfer cars from one company to another without breaking bulk was so well known as to be judicially recognized, said: ''Surely a course of business so long pursued, and so extensively prevailing, and demanded by the commerce of this country, cannot, when recognized and required by statute, become so objectionable in principle, so oppressive in operation, as to require the statute to be declared unconstitutional. A railroad company, as a common carrier, is required to receive and transport freight offered to it for transportation. The reasons upon which this rule is founded impose upon it the obligation to haul cars of other companies brought to it for transportation over its own road.   *   *   *   As the course of business of the railroad companies and the rules of law require them to transport the cars of other companies, surely a statute prescribing and enforcing the duty thus im-

posed cannot be regarded as interfering with the constitutional guaranties for the protection of the rights and property of such companies.''

While it is evident from the framework of the act that it was not the legislative purpose to make the order of the commission conclusive in any given case, where seasonably attacked, yet it is to be remembered that the commission is the chosen agent of the General Assembly for the carrying out of its will, and that, as the commission proceeds upon complaint and notice with an opportunity to the company to be heard, the presumption in favor of the validity of an order made by the commission for a track connection is strong, and a clear case must be made out to justify the overthrow of its action. See *Jacobson* v. *Wisconsin, etc., R. Co., supra.*

The map referred to in the commission's order shows that the interchange track has been ordered constructed with reference to appellant's general scheme for the building of its yards, and located, as it is, well up into the northwestern part of said yards, it is apparent that it was the design of the commission to create the least possible interference with appellant consistent with the location of said track at the crossing and south of appellant's main tracks. We think that it may also be said that the map shows that the amount of yard room of which appellant would be deprived would be small. The presumption is against the pleader, and all uncertainties in the complaint must be resolved in favor of the defendants. The averment that all of the land described in the complaint is ''necessary'' to enable appellant to handle its traffic at the city of Richmond and to discharge its duties as a common carrier may be assumed merely to mean that said lands would be reasonably convenient. See 5 Words and Phrases, title, ''Necessary.'' So the statement concerning the lands which appellant has purchased and ''needs'' for

206    SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

its terminal facilities, if not a mere recital, relates to 8. a matter which is in nowise definite in degree. There is nothing to show that other lands in or about Richmond may not be obtained for additional yards, along appellant's main tracks; and, besides, it is apparent from the map that but few cars could be stored along such tracks as the building of the proposed track might interfere with. We fail to perceive, in view of the situation, how the construction of said track would greatly interfere with the operation of appellant's sidings and switches, or how it would seriously interfere with or endanger the movement of passenger- or freight-trains upon appellant's main tracks. The original map shows that the interchange track connects with a track four tracks south of the nearest main 9. track, into which first-mentioned track all, or nearly all, of said yard tracks lead, and we can only infer that the interference and danger referred to have relation to putting additional business into the yard and to the handling of it upon the interchange track. Of course, it is always true that the greater the business of a railroad the greater the inconvenience and danger of handling it, but this of itself is not necessarily a sufficient reason for the failure of appellant to discharge its public duties. Besides, it is to be presumed that the commission would, upon application, make all such rules and regulations concerning the placing and handling of cars on such track as would safeguard appellant's business so far as possible and protect it from unnecessary inconvenience.

Relative to the casting of transfer business upon appellant's yards, the fact is not to be forgotten that the very purpose of the statutory requirement and order is to facilitate the movement of commerce, that the two railroad companies may the more efficiently perform the function for which they were chartered. If it is more convenient and economical for many shippers along two important lines of railroad which intersect each other that facilities should be

provided at such junction for the interchange of freight in car-load lots—as may fairly be assumed in view of the silence of the complaint upon the subject—it is an altogether insufficient answer that, at the particular point of intersection, the objecting company will be deprived of trackage for a few cars.

As to the averment of the complaint that it is "practicable" to construct and operate an interchange track a short distance north of the junction, which track would be convenient for both of the companies, and for the handling of the business of their patrons, we have to say that this affords a most meager description of the suggested track. It might be convenient for the companies and their patrons, and, from an engineering standpoint, practicable to construct it; but this gives us no idea as to its cost, or as to the danger and inconvenience which it might occasion to the public. Dangerous railroad and street intersections, for instance, are matters over which the commission has at least a *quasi* jurisdiction (§5553 Burns 1908, Acts 1907, p. 454, §19), and in determining whether the commission has reasonably exercised its authority in the designation of the place for building an interchange track due consideration must be given to the public interest in respect to the matters suggested.

There may be difficulties which might be urged against a track connection either to the south or to the north of the point of junction, but the facts before us do not warrant the conclusion that the statute should give way in the particular instance, and we would not reverse the holding of the commission as to the place of connection except upon a plain case of mistake or abuse of its powers. The showing made does not make out such a case.

The questions of the cost of the property and of want of benefit to appellant are not, in the circumstances, as shown by the authorities we have referred to, elements of sufficient importance to overthrow the order.

It is contended by appellant's counsel that the order amounts to a taking of its property without due compensation. It is true that the building of the interchange track would interfere with certain other tracks of appellant, but it by no means follows that it is entitled to compensation for that. The power of eminent domain and the police power spring from radically different sources, and when it is considered that appellant has dedicated its property to the use of the public for the purposes of transportation, and that the connection of intersecting lines of railroad greatly facilitates the shipment of freight, it is evident—the regulation being found to be reasonable —that uncompensated obedience is required. The extent of the police power in the regulation of the use of railroad tracks is well illustrated by *Mayor, etc.,* v. *Baltimore Trust, etc., Co.* (1897), 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160. See, also, *Richmond, etc., R. Co.* v. *Richmond* (1877), 96 U. S. 521, 24 L. Ed. 734; *United States* v. *Union Bridge Co.* (1906), 143 Fed. 377; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *Cincinnati, etc., R. Co.* v. *City of Connersville* (1908), 170 Ind. 316.

The fact that the order is a regulation of appellant in the use of its property is sufficient to distinguish this case from a class of cases which deny, in ordinary circumstances, the right to take property already devoted to a public use, under a general grant of the power of eminent domain, where the two uses cannot reasonably coexist. The power to require the construction of an interchange track could not be exercised at all if there were not authority under the statute to require the construction of such a track up to the point of junction with each railroad company's track, and, in view of this, and of the general grants of authority under the statute—the enactment being remedial rather than as against common right, as in the case of eminent domain—we are constrained to hold that

interchange tracks may be ordered constructed on the property of railroad companies already devoted to a public purpose, provided always that the order is not in the particular circumstances unreasonable.

As to the item of expense in constructing and maintaining the track and facilities, it appears to us that, if the companies cannot agree, application should be made to the commission under the clause of the order reserving jurisdiction for that purpose. Because of the form of the order, we have entertained some doubt whether it was final; but, since it purports finally to settle certain rights, and as the matters reserved look only to the execution of the order, we have been disposed to treat it, in the absence of any question in that respect, as a final order, for the purposes of attack in the courts. See 2 Ency. Pl. and Pr., 55; 2 Cyc., 588.

It is true that appellant owns more of the land to be occupied by the interchange track than the other company, but this is a mere fortuitous circumstance. So far as appellant will be deprived of its property, either on account of the use of said track for interchange purposes or by the interference of the same with the use of its property for other purposes, or may be put to expense, it is to be presumed that it will be compensated therefor by the fixing of adequate rates for switching or transfer charges. The commission's order indicates its contemplation that the other company shall bear some part of the expense of making such connection, and, although it may have completed the building of the track upon its own land, it should be charged with a fair share of the whole work, and of maintaining the same; but it is our view, nevertheless, that by the making of such contribution the other company acquires no interest in appellant's land, other than the right to have the track connection and the interchange of business; but, on the contrary, that appellant is entitled to

make any proper use of the track, within the limits of its own property, that would be consistent, in view of all of the circumstances, with its paramount purpose as a transfer track. The commission has the right to adjust details, but the statute should be administered upon the principle of not impinging upon original property rights except to the extent that the circumstances reasonably require it to be done.

It is next contended that congress has legislated upon the subject of interchange of traffic, and that therefore the order of the commission is void. The provision upon which 19. counsel for appellant rely is section three of the interstate commerce act. 3 U. S. Comp. Stat., 1901, p. 3155, 24 Stat., p. 379, 380. That section requires railroad common carriers to offer all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, for the receiving, forwarding and delivering of passengers and property to and from their several lines thus connected therewith, and provides: "But this shall not be construed as requiring any such common carrier to give the use of its track or terminal facilities to another carrier engaged in like business." We do not think that the order in question can be said to give to the Chicago, Cincinnati & Louisville Railroad Company the use of appellant's track or terminal facilities within the sense of the statute quoted. While the commission may doubtless make all appropriate regulations concerning the handling of cars on the interchange track, yet the other company can only use it for the purpose of locating or shifting cars which, if not actually moving at all times, may still be said to be at all times—speaking with reference to the due course of business—in transit from one railroad to the other. The language quoted from the interstate commerce act cannot, however, be said to amount to a substantive enactment. It is a mere interpretation clause, which is designed to restrain, if nec-

essary, the generality of the language which precedes it. See *In re Day* (1899), 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519. It appears that the case is one in which congress has not enacted any law which is inconsistent with the right of the State to order the connection made. As was said in *Reid* v. *Colorado* (1902), 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108, and repeated in *Asbell* v. *Kansas* (1908), 209 U. S. 251, 28 Sup. Ct. 485, 52 L. Ed. 778: ''It should never be held that congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested.''

The case is certainly not one in which the interference with interstate commerce is direct, wherein the silence of congress is an inhibition of state legislation upon the subject. Local legislation is not prohibited where it amounts to no more than a reasonable regulation of an instrumentality of interstate commerce, and only affects such commerce secondarily or in a remote degree. *Smith* v. *Alabama* (1888), 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; *Western Union Tel. Co.* v. *James* (1896), 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; *Chicago, etc., R. Co.* v. *Solan* (1898), 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; *Lake Shore, etc., R. Co.* v. *Ohio* (1899), 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702. Appellant was chartered by the State, and since one of the ends of its being is to furnish due facilities for the transportation of intrastate commerce, it should not be intended that a reasonable regulation by the State to effectuate that purpose is in conflict with the dominancy which the federal government must necessarily enjoy within the sphere of its own operations. We perceive no reason for holding that the order in question invades the federal authority.

Finally, it is contended that the provision of the order that the companies interchange business with each other in

212 . SUPREME COURT OF INDIANA,

Pittsburgh, etc., R. Co. *v.* Railroad Com., etc.—171 Ind. 189.

car-load lots at the intersection of their railroads makes the order void as a regulation of interstate commerce because it of necessity includes cars moving in such commerce. The proper construction of the order is a state and not a federal question. While we have no doubt that whatever the commission does in the way of ordering the construction of an interchange track must, from the relation of the carriers to interstate commerce, be held to inure to the benefit of such commerce, yet the order made must be considered in the light of the provision of the railroad commission act that it shall "apply only to the transportation of passengers and property between points within this State, and to the receiving, switching, delivering, storing and handling of such property." §5551 Burns 1908, Acts 1907, p. 454, §18. Just as an act of the legislature is to be read in the light of the Constitution, and the general language of the act be ascribed to an effort to exercise lawful legislative authority, so, without express limitation in the words of an order of an administrative board, it is to be assumed that it was designed to be in consonance with the statute under which the board lives and has its being. See *McCullough* v. *Virginia* (1898), 172 U. S. 102, 19 Sup. Ct. 134, 43 L. Ed. 382; *Commonwealth* v. *Gagne* (1891), 153 Mass. 205, 26 N. E. 449, 10 L. R. A. 442; *People, ex rel.,* v. *Butler, etc., Iron Co.* (1903), 201 Ill. 236, 66 N. E. 349; *Colquhoun* v. *Heddon* (1890), 24 Q. B. D. 491. As stated in *Stone* v. *Farmers Loan, etc., Co.* (1886), 116 U. S. 307, 29 L. Ed. 636, 6 Sup. Ct. 334: "It is presumed that they [the commissioners] will always act within the limits of their constitutional authority. It will be time enough to consider what may be done to prevent it when they attempt to go beyond." It appears to us, however, that the order may be supported as in aid of interstate commerce. *Chicago, etc., R. Co.* v. *Solan, supra; Missouri, etc., R. Co.* v. *Haber* (1898), 169 U. S. 613, 18 Sup. Ct. 488, 42 L. Ed. 878. Upon this question the case of *Wisconsin, etc.,*

*R. Co. v. Jacobson* (1900), 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, is much in point. It was there said: "To provide at the place of intersection of these two railroads, at Hanly Falls, ample facilities by track connections for transferring any and all cars used in the regular business of the respective lines of road· from the lines of track of one of said companies to those of the other, and to provide at such place of intersection equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering of property and cars to and from their respective lines, as provided for by this judgment, would plainly afford facilities to interstate commerce, if there were any, and would in nowise regulate such commerce within the meaning of the Constitution."

There is nothing in the argument of counsel which leads to the conclusion that the order of the commission should be set aside. The judgment of the court below is therefore affirmed.